IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA


IDEAL AEROSMITH, INC.,      )
                )
                )
     Plaintiff,      )
                )
 -VS-           )
             Civil Action No.  07-1029
                )
ACUTRONIC USA, INC., et al.,    )
                )
                )
     Defendants.    )


AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Plaintiff Ideal Aerosmith, Inc. ("Plaintiff" or "Ideal") asserts claims under federal and Pennsylvania state wiretapping and stored communications laws and additional state law claims for violation of Pennsylvania's uniform trade secrets act,  wrongful procurement/conversion of business information, civil conspiracy, and unfair competition.   Defendants Acutronic USA, Inc., Michael H. Swamp and Carl N. Hockenberry (collectively, "Acutronic"), Acutronic Schweiz AG, Acutronic Group[1], Jung

---

[1]Defendants assert that Acutronic Group is merely a Swiss accounting designation and does not exist as a juristic entity.  No proof of service has been filed by Plaintiff with respect to Acutronic Group.  Nevertheless, to the extent that Acutronic Group represents any member of the "Acutronic family," it has joined in the motion to dismiss.  See Motion by Acutronic Schweiz AG, Jung Technologies Holding AG and Thomas W. Jung to Dismiss Complaint Under Rule 12(b)(6), F.R. Civ. P. [Docket No. 11].

Technologies Holding AG and Thomas W. Jung (collectively, the "Swiss Defendants") have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim [Docket Nos. 5 and 11]. For the reasons set forth below, I dismiss Counts 1, 2, 4 and 5 of the Complaint setting forth claims under federal and state wiretapping and stored communications laws and Count 6 of the Complaint alleging wrongful procurement/conversion of business information. I deny Defendants' motions to dismiss Counts 3, 7 and 8 of the Complaint alleging misappropriation of trade secrets, unfair competition and civil conspiracy.

## I. LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. Haspel v. State Farm Mut. Auto. Ins. Co., 2007 WL 2030272, at *1 (3d Cir. July 16, 2007). However, "[f]actual allegations must be enough to raise the right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, – U.S.–, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In order to survive a motion to dismiss, the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 1969.

## II. DEFENDANTS' MOTIONS TO DISMISS

### A. ALLEGATIONS OF THE COMPLAINT

Plaintiff Ideal is a leading manufacturer and supplier of aerospace test equipment, including motion simulators for inertial guidance testing, gyro test

systems and missile simulators, in the United States and international markets. Among its products, Plaintiff developed and manufactures the AERO 4000 motion controller.

Defendants, located in the United States and Switzerland, also manufacture and supply aerospace test equipment and motion simulators. They are Ideal's principal competitors in the domestic and international aerospace motion controller market. Defendants Acutronic and Acutronic Schweiz manufacture and sell a motion controller system known as the ACUTROL 3000, which competes with Ideal's AERO 4000.

Non-party Carco Electronics ("Carco") was the only company that competed to a significant degree with Ideal and Defendants in the motion simulator market. However, Carco entered into bankruptcy protection as a debtor-in-possession under Chapter 11 of the Bankruptcy Code. Pursuant to its plan of reorganization, which was filed in the United States Bankruptcy Court for the Western District of Pennsylvania, Carco was required to market and sell substantially all of its assets free and clear of liens.

On December 17, 2004, Carco ceased all its operations and terminated all of its production workers at its two operating facilities in Pittsburgh, Pennsylvania and Menlo Park, California. On December 31, 2004, Ideal entered into an asset purchase agreement with Carco. On January 2, 2005, Ideal hired most of Carco's former employees in order to continue Carco's operations and preserve its assets pending the Bankruptcy Court's approval of the sale. Ideal also took possession of Carco's

facilities and began operating Carco's business and filling outstanding orders. During this time, the former Carco employees who had been hired by Ideal continued to use their Carco e-mail addresses, which utilized the domain names of "carco-east.com" for the Pittsburgh office and "carcoelect.com" for the Menlo Park office.

On February 1, 2005, the Bankruptcy Court conducted an auction-type sale of Carco's assets under section 363 of the Bankruptcy Code. Acutronic outbid Ideal and Carco's secured creditor and purchased substantially all of Carco's assets on a non-warranty 'as is, where-is' basis. Within a day following the sale hearing, Ideal tendered possession of the Carco facilities to Acutronic, and all of Ideal's employees, including the former Carco employees, left the Carco facilities. As of February 2, 2005, Acutronic exercised control of Carco's assets, including the Carco e-mail addresses of all of Carco's former employees. On or about February 15, 2005, Acutronic and Carco closed on the asset sale and Acutronic became the owner of Carco's assets.

Shortly after the sale hearing on February 1, 2005, all of the former Carco employees hired by Ideal were assigned new "Ideal" e-mail addresses. These addresses all contained the domain name "idealaero.com." Plaintiff alleges that, despite providing new "Ideal" e-mail addresses, former Carco employees, now employed by Ideal,  and third parties doing business with Ideal inadvertently continued to send communications using the old Carco e-mail addresses with the Carco domain name. According to Plaintiff, Acutronic, which now owned the Carco

servers, caused the Carco servers to redirect those e-mail messages to an Acutronic server. Acutronic then read the messages, some of which contained Ideal trade secrets and confidential business information, including information related to the marketing and sale of Ideal's Aero 4000, and shared the contents of the messages and/or forwarded the messages to and among the Defendants. Acutronic did not disable the old Carco addresses, did not inform the senders that the addresses were no longer valid, and did not forward the messages to the intended recipients.

Plaintiff alleges that these actions constitute a violation of the Federal Wiretapping Act, 18 U.S.C. secs. 2510 *et seq.*, the Federal Stored Communications Act, 18 U.S.C. secs. 2701 *et seq.*, Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S. secs. 5308 *et seq.*, Pennsylvania Wiretapping Act, 18 Pa.C.S. secs. 5701 *et seq.*, Pennsylvania Wiretapping Act - Stored Communications, 18 Pa.C.S. secs. 5741 *et seq.*, and Pennsylvania common law of wrongful procurement/conversion of business information, civil conspiracy and unfair competition.

B. WIRETAPPING AND STORED COMMUNICATIONS CLAIMS - COUNTS 1, 2, 4 AND 5

    1. Statute of Limitations

The statute of limitations for claims brought under the Federal Wiretapping and Stored Communications Acts is two years from the date "the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. §2520(e); 18 U.S.C. §2707(f). Pennsylvania's wiretapping and stored communications statutes also have two-year statutes of limitations. 18 Pa.C.S. § 5474(e); 42 Pa.C.S. § 5524(7). Defendants argue that since Plaintiff has alleged that the interceptions began on or about

February 2, 2004, and this action was not commenced until July 23, 2007, the claims are time-barred.

"In ruling on a motion to dismiss on statute of limitations grounds, the Court may not look beyond the face of the complaint. Thus, 'a 12(b)(6) motion should not be granted on limitations grounds unless the complaint facially shows noncompliance with the limitations period." Giusto v. Ashland Chem. Co., 994 F. Supp. 587, 594 (E.D. Pa. 1998) (quoting Clark v. Sears Roebuck & Co., 816 F. Supp. 1064, 1067 (E.D. Pa. 1993)); see also, Hunt v. PA Dep't of Corrections, 2006 WL 676222, at *1 (3d Cir. Mar. 17, 2006) ("A complaint may not be dismissed under Rule 12(b)(6) as untimely under the relevant statute of limitations unless it is plain from the face of the complaint that it was not timely filed."); Fralin v. C and D Sec., Inc., 2007 WL 1576464, at *4 (E.D. Pa. May 30, 2007) (refusing to consider allegations outside the complaint for statute of limitations determination).

Plaintiff correctly argues that the statute of limitations on its wiretapping and stored communications claims does not begin to run until it discovered or with the exercise of reasonable diligence should have discovered the acts constituting the alleged violation. See, e.g., Directv, Inc. v. Rodkey, 369 F. Supp.2d 587, 598 (W.D. Pa. 2005) (discovery rule applicable to wiretapping claims).

Here, the Complaint does not allege when Ideal discovered the purported wiretapping and accessing of stored electronic communications. Moreover, Ideal alleges that the conduct of Defendants is ongoing. Accordingly, at this stage of the proceedings, questions of fact preclude dismissal of Plaintiff's wiretapping and

electronic storage claims on statute of limitations grounds.

2. <u>Adequacy of Pleading - Wiretapping Claims</u>

Plaintiffs' first and fourth claims arise under the Federal Wiretapping Act, 18 U.S.C. §§ 2510 *et seq.* and its Pennsylvania counterpart, the Pennsylvania Wiretapping Act, 18 Pa.C.S. §§ 5701 *et seq.* The Pennsylvania act tracks the language set forth in the Federal Act, and has been interpreted identically. See <u>Fraser v. Nationwide Mut. Ins. Co.</u>, 352 F.3d 107, 113 n.6 (3d Cir. 2004) (Pennsylvania statute "interpreted in the same way as the ECPA, [and] the analysis and conclusions in the text apply equally to this state law claim"). Plaintiff alleges that Defendants violated the Acts "[b]y unlawfully intercepting, disclosing and using Ideal's emails." (Complaint, ¶¶ 33, 39.)

Title I of the Electronic Communications Privacy Act of 1986 (the "ECPA" or "Wiretap Act"), which amended the Wiretap Act of 1968, makes it an offense to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication. . . ." 18 U.S.C. § 2511(1); <u>see also</u>, <u>United States v. Councilman</u>, 418 F.3d 67 (1st Cir. 2005)(discussing the legislative history of the ECPA). In addition, liability under the Wiretap Act may arise from the disclosure of, attempt to disclose, use of or attempt to use, the contents of any communication while knowing or having reason to know that such contents were obtained through an interception violating the Act. 18 U.S.C. § 2511(1)(c)-(d). "Intercept" is defined by the Wiretap Act as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Accordingly, in order to state a claim under the Wiretap Act, a plaintiff must allege that a communication was intentionally intercepted through the use of a device. It follows that, absent an interception, neither the disclosure nor use of the contents of the communication violates the Wiretap Act. Wesley College v. Pitts, 974 F. Supp. 375, 381 (D. Del. 1997), aff'd, 172 F.3d 861 (3d Cir. 1998). "The Court need not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act." Crowley v. Cybersource Corp., 166 F. Supp.2d 1263, 1268 (N.D. Ca. 2001).

In support of its wiretapping claims, Ideal has alleged that, after Acutronic purchased Carco, certain e-mail messages (the "Ideal Emails") were sent by Ideal's employees, including former Carco employees hired by Ideal, and by third parties conducting business with Ideal, to web addresses utilizing the Carco domain name. These e-mail messages were received by the Carco servers, now owned by Acutronic, and "redirected" by Acutronic to its own servers and/or forwarded to and among the other Defendants.

These allegations do not state a claim of wiretapping. As an initial matter, Plaintiff has standing to assert claims only with respect to those communications sent by Plaintiff and its employees, not with respect to those communications sent by third parties. See Klump v. Nazareth Area Sch. Dist., 425 F. Supp.2d 622, 633 (E.D. Pa. 2006) ("The intended recipient of an intercepted communication. . .has no standing to raise claim under [the Pennsylvania Wiretap Act]. Rather, "that cause of action belongs only to the person with whom the communication originated. . . .").

8

More significantly, Plaintiff has failed to allege the use of a device to intercept the communications.  See Wesley College v. Pitts, 974 F. Supp. at 385 (interception does not occur absent the use of a device); Commonwealth v. Proetto, 771 A.2d 823, 832 (Pa. Super. Ct. 2001) (under Pennsylvania Wiretap Act, "intercept" requires the contemporaneous acquisition of the communication through the use of a device), aff'd, 837 A.2d 1163 (Pa. 2003).  The drive or server on which an e-mail is received does not constitute a device for purposes of the Wiretap Act.  See Crowley, 166 F. Supp.2d at 1269.

In Crowley, the plaintiffs purchased items from Amazon.com.  As part of their transactions, they transferred certain information about themselves, including identity and credit information.  166 F. Supp.2d at 1266.  Amazon, in turn, relayed this information to CyberSource for purposes of verifying the plaintiffs' credit.  Id. Cyberspace compiled this information, as well as information on those purchasers acquired from other vendors, into a database profiling the purchasers.  Id.  The plaintiffs alleged that Amazon intercepted their communications, disclosed the contents to Cyberspace and used the contents to create profiles of the purchasers, all in violation of the Wiretap Act. Id. at 1267.

The District Court granted Amazon's motion to dismiss the claim under the Wiretap Act.

> Amazon did not, however, "intercept" the communication within the meaning of the Wiretap Act, because Amazon did not acquire it using a device other than the drive or server on which the e-mail was received. . . .Amazon acted as no more than the second party to a communication. This is not an interception as defined by the Wiretap Act.

> [Plaintiff]s' argument, moreover, would result in an untenable result. Holding that Amazon, by receiving an e-mail, intercepted a communication within the meaning of the Wiretap Act would be akin to holding that one who picks up a telephone to receive a call has intercepted a communication and must seek safety in an exemption to the Wiretap Act. Such a result would effectively remove from the definition of intercept the requirement that the acquisition be through a "device."

Id. at 1269; see also, Hall v. EarthLink Network, Inc., 396 F.3d 500, 504 (2d Cir. 2005) (Earthlink's continued receipt and retention on its system of e-mails sent to subscriber's closed account did not constitute the use of a device resulting in an interception under the Wiretap Act).

Here, there is no dispute that the Ideal E-mails were sent directly to Carco's server, now owned by Acutronic. Acutronic employed no device to acquire these e-mails, but was merely, as owner of Carco's system, a direct party to the communication. While Ideal complains that Acutronic was not the intended recipient of the communication, that argument has no legal bearing where the communication was nonetheless sent to Carco/Acutronic. See Proetto, 771 A.2d at 832 (no wiretapping violation despite the fact that police officer, rather than defendant, received the call since "[t]he Wiretapping Act is not intended to prevent a telephone user from misrepresenting his identity").[2]

Moreover, even if Acutronic's acquisition of the e-mails constituted an

---

[2]For the same reason, Plaintiff may be unable to demonstrate that any "interception" of the Ideal Emails was intentional, as required by the Act. See In re Pharmatrak, Inc., 329 F.3d 9, 23 (1st Cir. 2003) ("inadvertent interceptions are not a basis for criminal or civil liability"). It bears repeating that Plaintiff has alleged that the Ideal Emails were mistakenly sent to Carco/Acutronic by Plaintiff and third parties.

"interception" for purposes of the Wiretap Act, Acutronic is exempt under section 2511(2), which allows an "officer, employee or agent of a provider of wire or electronic service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service." 18 U.S.C. § 2511(2); see also, 18 Pa.C.S.A. § 5704(1) (same) . In Freedom Calls Foundation v. Bukstel, 2006 WL 845509, at *27 (E.D.N.Y. Mar. 3, 2006), the defendant, a former employee who had established a competing business, asserted a counterclaim seeking injunctive relief to prevent the plaintiff, his former employer, from continuing to monitor the defendant's prior e-mail address at the plaintiff's company. The District Court held that the plaintiff had a right under the Wiretap Act to continue to monitor e-mails sent to the former employee. "Plaintiff has the right to "intercept," that is, receive and review future e-mails sent to the ebukstel@freedomcalls.org account, so long as it does so in the normal course of business, because Plaintiff is an employer and monitoring is necessary to ensure that current and prospective Supporter and Client email messages are answered in a timely manner." 2006 WL 845509, at *27.

Based on the allegations of the Complaint, Acutronic purchased the assets of Carco. As the purchaser, Acutronic became the successor-in-interest to Carco's business, and had the right to monitor communications received by Carco via Carco's server. Accordingly, even if the communications were intercepted,

Acutronic is exempt from liability under the Wiretap Act for the alleged conduct.

For the foregoing reasons, I dismiss Counts 1 and 4 of the Complaint.

3. Adequacy of Pleading - Stored Communications Claims

Plaintiff's second and fifth claims arise under the Federal Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*, and the Stored Communication provision of the Pennsylvania Wiretapping Act, 18 Pa.C.S. §§ 5741 *et seq.* The same allegations upon which the wiretapping claims discussed above rely are also the basis of Plaintiff's stored communications claims.

Title II to the ECPA, the Stored Wire and Electronic Communications and Transactional Records Access (the "Stored Communications Act"), 18 U.S.C. § 2701, provides that "whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided . . .and thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished. . . ." Section 2707 provides for a private right of action for injunctive relief and damages for violations of the provision. 18 U.S.C. § 2707 (a)-(c). The language of the Pennsylvania statute, 18 Pa. C. S. § 5741, mirrors the federal statute and is interpreted accordingly. Fraser, 352 F.3d at 114 n.9.

The general purpose of the Stored Communications Act was to "create a cause of action against 'computer hackers (e.g. electronic trespassers).'" International Ass'n of Machinists and Aerospace Workers v. Werner-Masuda, 390 F. Supp.2d 479, 495 (D. Md. 2005) (quoting Sherman & Co. V. Salton Maxim Housewares, Inc., 94 F. Supp.2d

817, 820 (E.D. Mich. 2000)).  This purpose is consistent with the broad exemption provided by Title II with respect to "conduct authorized  by the person or entity providing a wire or electronic communications service."   18 U.S.C. §2701(c)(1).  Numerous courts have found that employers which provide their employees with "the ability to send or receive electronic communications" are "person[s] or entit[ies] providing a wire or electronic communications service" for purposes of the exemption. See, e.g., Fraser, 352 F.3d at 115 (insurance company which administered e-mail system for its agents was a provider); Freedom Calls Foundation, 2006 WL 845509, at *27 (foundation a provider of service); Bohach, 932 F. Supp. at 1237 (city is the provider of electronic communications service to police department since police department's terminals, computer and software enable them to send or receive electronic communications).

A defendant who is a provider of electronic communication service is immune from liability under § 2701.   In Fraser, the Third Circuit held that an employer which provided e-mail service to its employees was exempt from liability under Title II when it searched and retrieved from its system e-mails sent and received by its employee.  352 F.3d at 115.  The Third Circuit relied on the District Court of Nevada's opinion in Bohach v. City of Reno, 932 F. Supp. 1232, 2336 (D. Nev. 1996), which held that "§2701(c)(1) allows service providers to do as they wish when it comes to accessing communications in electronic storage."   See also, Freedom Calls Foundation, 2006 WL 845509, at *27 ("Plaintiff has the right to search these stored e-mails as the need arises because Plaintiff provided Defendant with the ability to

send and receive electronic communications."); <u>In re Amercian Airlines, Inc. Privacy Litig.</u>, 370 F. Supp.2d 552, 557 n.8 (N.D. Tex. 2005) (claim under 2701 "would seem to make little sense since American would apparently have plenary authority to access its own facility").

The Complaint alleges that Acutronic purchased the assets of Carco, including "the e-mail addresses of all of Carco's former employees." (Complaint, ¶ 21.) Thus, Carco's computers, servers and software all became the property of Acutronic, which became responsible for administering it. Accordingly, Acutronic is a provider within the meaning of 2701(c) and is exempt from liability for accessing e-mails sent to and stored in its facilities.

Plaintiff's allegations that Defendants disclosed and used the content of those communications do not save its invalid claim under §2701. "Section 2701 does not proscribe unauthorized use or disclosure of information obtained from authorized access to a facility." <u>In re American Airlines, Inc. Privacy Litig.</u>, 370 F. Supp.2d at 559; <u>see also</u>, <u>International Ass'n of Machinists and Aerospace Workers</u>, 390 F. Supp.2d at 499 (Title II does "not prohibit the unauthorized discosure or use of information, but rather unauthorized access. Nor [do its] terms proscribe authorized access for unauthorized or illegitimate purposes."); <u>Sherman & Co. V. Salton Maxim Housewares, Inc.</u>, 94 F. Supp.2d 817, 820 (E.D. Mich. 2000) (disclosure of information to a competitor does not state a claim under § 2701); <u>Wesley</u>, 974 F. Supp. at 389 ("Title II prohibits unauthorized access to stored electronic communications, but does not censure the disclosure or use of the contents of those stored communications. . .

."). Since Acutronic, as a provider of the communications service, has the unfettered right to access communications stored on its system, it also cannot be liable under § 2701 for the use or disclosure of the contents of those communications.

Based on the foregoing, I find that Plaintiff has failed to state a claim under section 2701 of the Stored Communications Act, as well as its Pennsylvania counterpart. Accordingly, I dismiss counts 2 and 5 of the Complaint.

C. PLAINTIFF'S STATE LAW CLAIMS

1. Pennsylvania Uniform Trade Secrets Act

Plaintiff's third claim arises under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa.C.S. §§ 5308 *et seq.* Plaintiff alleges that by "unlawfully intercepting, disclosing and using Ideal's Emails, Defendants violated" the PUTSA. (Complaint ¶ 39.) Defendants argue that this claim must be dismissed because "Ideal never identifies what comprises the alleged trade secrets or what steps it took to make the alleged trade secret information a trade secret." (Def. Mem. at 18.) Defendants further argue that there can be no trade secret as a matter of law because Plaintiff disclosed the information, even if accidently or inadvertently, and that a claim under the PUTSA requires a wrongful act in acquiring the e-mails. (Def. Reply Mem. at 5.)

The PUTSA defines a "trade secret" as "[i]nformation, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

by proper means by, other persons who can obtain economic value from its disclosure or use[; and] (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."    12 Pa.C.S.A. §5302.  The PUTSA defines "misappropriation" as, in relevant part: "(2) disclosure or use of a trade secret of another without express or implied consent by a person who. . .(iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake." Id.

Defendants' argument that Plaintiff has failed adequately to allege what comprises the trade secrets is incorrect.  In paragraph 25 of its Complaint, Plaintiff identified the trade secrets as relating to, "information concerning the development, marketing and sale of Ideal's Aero 4000 motion controller, customer communications and other property."  Plaintiff further alleged that the Ideal Emails contained trade secret and confidential business information and other property "including proprietary development specifications for Ideal's AERO 4000, pricing data, marketing information, product bid information, and customer communications." (Complaint, § 27.) This constitutes adequate identification of the trade secret material for pleading purposes. See Freedom Med. Inc. V. Gillepsie, 2007 WL 2480056, at *22 (E.D. Pa. Aug. 29, 2007) (claim for misappropriation of trade secrets need not be pleaded with particularity).

Defendants' remaining arguments do not warrant dismissal of Plaintiff's trade secrets claim.  As an initial matter, Plaintiff correctly points out that the case law relied upon by Defendants interprets Restatement of Torts § 757, rather than the

PUTSA. See, Frank W. Winne and Son, Inc. v. Palmer, 1991 WL 155819, at *3 (E.D. Pa. Aug. 7, 1991); Defiance Button Machine Co. v. C & C Metal Prods. Corp., 759 F.2d 1053 (2d Cir.), cert. denied, 474 U.S. 844 (1985). In any event, even under that case law, whether a plaintiff has taken sufficient measure to protect its trade secrets is a question of fact. See, e.g., Frank W. Winne and Son, Inc., 1991 WL 155819, at *3. Here, Defendant does not claim that it learned or could have learned Plaintiff's trade secrets in any manner except by reading the Ideal Emails sent to old Carco e-mail addresses. Plaintiff alleges that, upon Carco's sale to Acutronic, Plaintiff provided new Ideal e-mail addresses to the former Carco employees. Compare Defiance Button Machine Co., 759 F.2d at 1063-64 (no protection for trade secret information left on hard drive of computer transferred to defendant as part of asset sale). Moreover, Plaintiff has also alleged that some of the Ideal Emails acquired by Defendants were sent by Plaintiff's customers and/or potential customers. (Complaint, ¶ 25.) Again, the record at this stage does not allow me to determine as a matter of law that Plaintiff failed to take adequate measures to protect those trade secrets in the hands of third parties. See CDI Internat'l, Inc. v. Marck, 2005 WL 327536, at *2 (E.D. Pa. Feb. 8, 2005) (denying motion to dismiss where "record before the Court at this early stage of the litigation is not developed enough to conclude that CDI failed to take reasonable steps to protect its trade secrets and thus forfeited those trade secrets").

Finally, a plaintiff can state a claim for misappropriation of trade secrets under Pennsylvania law even where the trade secret was acquired by mistake rather

than misconduct.  To state a claim for misappropriation under the PUTSA, the plaintiff need only allege that the defendant used or disclosed information that it knew or had reason to know was a trade secret and that the defendant had acquired such information by accident or mistake.  12 Pa.C.S.A. § 5302; see also, B&B Microscopes v. Armogida, 2007 WL 2814595, at *11 (W.D. Pa. Sept. 25, 2007) ("The Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S.A.§ 5301 et seq. makes it unlawful to disclose or use the trade secret without consent."); H2Ocean, Inc. v. Schmitt, 2006 WL 1835974, at *3 (N.D. Fl. June 30, 2006) (interpreting an identical trade secret statute and denying motion to dismiss complaint "[s]ince a defendant can commit theft of trade secrets without acquiring the trade secrets in question by improper means"), appeal dismissed, 208 Fed.Appx. 843 (Fed. Cir. 2006).[3]  Here, Plaintiff has alleged that Acutronic acquired Plaintiff's trade secrets by mistake when they were inadvertently sent to old Carco e-mail addresses, and that Defendants disclosed and used these trade secrets to compete with Plaintiff.  Accordingly, Plaintiff has stated a claim for violation of Pennsylvania's Uniform Trade Secrets Act.

2. Wrongful Procurement/ Conversion of Business Information

Count 6 of the Complaint alleges a claim for wrongful procurement/conversion of business information.  Specifically, Plaintiff alleges that "Defendants used improper means to wrongfully procure and/or convert Ideal's confidential and valuable business information contained in Ideal's Emails."

---

[3]Similarly, section 757 of the Restatement of Torts provides that "[o]ne who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if. . .(d) he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake."

(Complaint, ¶ 48.)  Defendants argue that, since Plaintiff has not stated a valid claim under the federal or state wiretapping or stored communications statutes, then Plaintiff's claim for wrongful procurement must also fail.  I agree with Defendants.

Pennsylvania courts have recognized as actionable conduct prohibited under Section 759 of the Restatement of Torts.  See Pestco, Inc. V. Associated Prods., Inc., 880 A.2d 700, 708 (Super. Ct. 2005); Den-Tal-Ez, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1231 (Pa. Super. Ct. 1989).  Section 759 provides: "One who, for the purpose of advancing a rival business interest, procures by improper means information about another's business is liable to the other for the harm caused by his possession, disclosure or use of the information."  Pestco, Inc., 880 A.2d at 709.  As Defendants have argued, a claim brought under this theory requires acquisition of confidential business information through misconduct.  See Den-Tal-Ez, Inc., 566 A.2d at 253-54 ("[t]he requirement that the defendant procure the information by improper means is also squarely fulfilled in this case").

The sole 'improper means' alleged by Plaintiff is through violations of the federal and state wiretapping and stored communications acts.  Since I dismissed Plaintiff's claims under those statutes in section II(B) above, I accordingly dismiss Plaintiff's sixth claim alleging wrongful procurement.

3. Unfair Competition

Count 8 of the Complaint alleges that "[b]y engaging in the conduct described above, Defendants have unlawfully and without privilege engaged in unfair competition under the common law of the Commonwealth of Pennsylvania to the

detriment of Ideal in violation of the law." (Complaint, ¶ 56.) As with the wrongful procurement claim discussed above, Defendants argue that Plaintiff has failed to state a claim for unfair competition because it has failed to allege that Defendants procured the information through improper means. With respect to this claim, I disagree with Defendants' interpretation of Pennsylvania law..

"A claim for unfair competition may be based on conduct that is otherwise actionable at common law." Brett Senior & Assocs., P.C. v. Fitzgerald, 2007 WL 2043377, at * 8 n.12 (E.D. Pa. July 13, 2007) (unfair competition claim dependent on dismissed misappropriation claim must also fail); see also, Lakeview Ambulance and Med. Svcs., Inc. v. Gold Cross Ambulance and Med. Svc., Inc., 1995 WL 842000, at *1 (Pa. Comm. Pl. Oct. 18, 1995) ("The doctrine of unfair competition extends to the misappropriation for the commercial advantage of a benefit or a property right belonging to another.").

While I have dismissed Counts 1, 2, 4, 5 and 6, Plaintiff's third claim for misappropriation of trade secrets remains. Accordingly, I deny Defendants' motions to dismiss Count 8 alleging unfair competition.

4. Civil Conspiracy

Count 7 of the Complaint alleges a claim for civil conspiracy under Pennsylvania common law. To plead a claim for civil conspiracy, a plaintiff must allege: "(1) the persons combined with a common purpose to do an unlawful act or to do a lawful act by unlawful means or unlawful purpose, (2) an overt act in furtherance of the common purpose has occurred, and (3) the plaintiff has incurred

actual legal damage." Rouse v. II-VI, Inc., 2007 WL 1007925, at *14 (W.D. Pa. Mar. 30, 2007). "Simply alleging the existence of an agreement or conspiracy is not enough" to survive a motion to dismiss. Kist v. Fatula, 2007 WL 2404721, at *9 (W.D. Pa. Aug. 17, 2007). Rather, a plaintiff must "allege particularized facts, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." Bair v. Purcell, 500 F. Supp.2d 468, 500 (M.D. Pa. 2007).

I find that Plaintiff has met its burden of pleading a claim of civil conspiracy, albeit barely. Plaintiff has alleged a conspiracy beginning on or about February 2005, between Acutronic and the Swiss Defendants, to use and disclose the Ideal E-mails involving Plaintiff's trade secrets and confidential business information, in order to more effectively compete against Plaintiff in the United States and European markets. (Complaint, ¶¶ 24, 27.) Of course, this civil conspiracy claim only survives with respect to those state law claims that have not been dismissed, i.e. misappropriation of trade secrets and unfair competition. See Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 406 (3d Cir.) ("We are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct."), cert. denied, 531 U.S. 1011 (2000); Haymond v. Haymond, 2001 WL 74630, at *2 (E.D. Pa. Jan. 29, 2001) (dismissal of underlying tort claim effectively dismissed the civil conspiracy claim), aff'd sub nom., Lundy v. Hochberg, 79 Fed.Appx. 503 (3d Cir. 2003); Kist, 2007 WL 240472, at *9 ("It should also be noted that in Pennsylvania, a claim for civil conspiracy cannot be pleaded

without alleging an underlying tort.") Moreover, in order to survive any subsequent motion for summary judgment, Plaintiff is going to have to set forth facts substantiating its allegations of agreement and overt acts on the part of the Swiss Defendants.  I also note that Plaintiff has alleged a close corporate relationship among the Defendants.  Under Pennsylvania law, conspiracy requires a plurality of actors.  See Commonwealth of PA v. BASF Corp., 2001 WL 1807788, at *17 (Pa. Comm. Pl. Mar. 15, 2001).  If the evidence demonstrates that the Defendants are merely corporate alter egos, they cannot be capable of conspiracy.  See id.; Academy Plaza L.L.C.1 v. Bryant Asset Mgmt., 2006 WL 1652687, at *14 (Pa. Comm. Pl. June 9, 2006) (dismissing conspiracy claim where one defendant "was so involved with the remaining defendants that they were not able to conspire").

Accordingly, I deny Defendants' motions to dismiss Count 7 of the Complaint.

<u>CONCLUSION</u>

For the reasons set forth above, I grant Defendants' motions to dismiss Counts 1, 2, 4, 5 and 6 of the Complaint.  I deny Defendants' Motions to Dismiss Counts 3, 7 and 8 of the Complaint.


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


<u>ORDER OF COURT</u>

AND NOW, this **13th** day of December, 2007, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Motions to dismiss

(Docket Nos. [5] and [11]) are granted with respect to Counts 1, 2, 4, 5 and 6 of the Complaint and denied with respect to Counts 3, 7 and 8 of the Complaint.

Defendants are Ordered to answer the Complaint within ten (10) days of the date of this Order.

It is further Ordered that a case management conference is scheduled for Tuesday, January 8, 2008, at 9:30 A.M. before the undersigned on the Third Floor, Suite 3280 of the U.S. Post Office and Courthouse. Counsel shall have settlement authority and parties are to be available by telephone. Position letters are to be faxed to Chief Judge Ambrose three (3) days prior to the conference.


BY THE COURT:



/S/  Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge