IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| IDEAL AEROSMITH, INC., | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Civil Action No. 07-1029 |
| ACUTRONIC USA, INC., *et al.*, | ) |  |
| Defendants. | ) |  |

AMBROSE, Chief District Judge

**MEMORANDUM ORDER**

This memorandum order addresses Plaintiff's Motion to Compel Discovery and for Sanctions Pursuant to Fed. R. Civ. P. 30 and 37 and 28 U.S.C. § 1927 [Docket No. 98], Defendants' response thereto [Docket No. 106], Defendants' Motion for a Protective Order [Docket Nos. 104 and 106], Plaintiff's response thereto [Docket No. 109] and Plaintiff's reply [Docket No. 113]. Plaintiff's motion to compel and for sanctions seeks a remedy for what Plaintiff characterizes as obtrusive behavior by Defendants' counsel, principally Leland Schermer, during the course of seven depositions conducted by Plaintiff's counsel. Such conduct, according to Plaintiff, included improper instructions to the witnesses not to answer questions, objections improperly asserting the attorney-client privilege, objections suggesting answers to the witnesses, counsel answering for the witnesses, and generally improper speaking objections which disrupted the questioning. Defendants' related motion for a protective order asserts the propriety of defense counsel's instructions not to answer certain questions. Having

1

carefully considered the motions and their responses, I find as follows:

## I. Instructions not to answer

Plaintiff identifies six topics where counsel for Defendants directed the witness not to answer: (i) questions relating to whether Defendants' receipt and/or forwarding of Ideal e-mails was wrong or known to be wrong; (ii) questions relating to searches conducted for documents relevant to the lawsuit; (iii) questions relating to an Acutronic press release; (iv) questions regarding the intent behind a 2005 lawsuit; (v) questions relating to damages or other elements of the lawsuit; and (vi) questions regarding a witness' recollection of attachments to document. I will address each of these topics individually.[1] Before doing so, however, I apparently must remind Defendants' counsel of the rules regarding instructions not to answer in depositions.

Federal Rule of Civil Procedure 26(b)(1) permits litigants to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." "Relevance under Rule 28 is generally construed broadly." Hopkins v. Newday Fin., LLC, 2008 WL 4657822, at *2 (E.D. Pa. Oct. 17, 2008). Significantly, under Rule 26(b)(1), "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Pursuant to Federal Rule of Civil Procedure 30(c)(2), an attorney may instruct a witness not to answer "only when necessary to preserve a privilege, to enforce a limitation ordered by the

---

[1] There are also a number of questions identified by Plaintiff where counsel for Defendants instructed the witness not to answer, but the witness nevertheless provided an answer. (See, e.g., Havlicsek dep. at 24-25, 87-88; Hockenberry dep. at 78; Almendinger dep. at 115; Schinabeck dep. at 31; and Stevens dep. at 17, 58.) I do not address these questions, since the direction ultimately did not impede discovery.

2

court, or to present a motion under Rule 30(d)(3)."[2] "Even if questions ask hypotheticals or opinions, they must be answered by the witness." Helfrich v. Haines and Kibblehouse, Inc., 2005 WL 730640, at *1 (E.D. Pa. Mar. 29, 2005).

During the depositions of Dominique Schinabeck and Michael Swamp, Mr. Schermer directed the witnesses not to answer the following questions: "Do you find it acceptable for Acutronic to have received Ideal Aerosmith internal e-mail for a period of months without disclosing the fact that they were receiving those e-mails?"; "Mr. Swamp, do you have an opinion as to whether or not there's anything wrong with Acutronic USA having received, read, and disclosed internal Ideal e-mail?"; and "[D]o you then believe that it was appropriate, given Mr. Jung's ownership interest in Acutronic Switzerland and his position that he held with the company and the position that he held with Jung Technologies and his ownership interest in that company that it was appropriate for you and Acutronic USA to send Ideal internal e-mails to him?" Defendants argue that these questions are "irrelevant and highly prejudicial," and would not be admissible at trial. [Docket No. 106, at 16.]

While these questions perhaps were not artfully worded, they are arguably relevant to Plaintiff's claims. Under Pennsylvania law, a misappropriation of trade secrets occurs by the disclosure or use of a trade secret of another without express or implied consent by a person who, before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake. See 12 Pa.C.S.A § 5302. Thus, Defendants' state of mind with respect to the alleged receipt, use and disclosure of the e-

---

[2] Rule 30(d)(3) permits an attorney to limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party."

3

mails is sufficiently relevant that such questions should have been permitted at the depositions.

The same is true with respect to topics three through six set forth above. While Defendants argue that some of these questions were asked in bad faith and in connection with other litigation between the parties [Docket No. 106, at 11 n.7], Defendants neither identify the specific questions which fall within this category nor provide any substance to this conclusory allegation.[3] In any event, based on the Court's understanding of the claims and counterclaim in this action, these questions were proper pursuant to Rule 26(d). This is particularly true with respect to questions relating to Defendants' use of the e-mails. (See Stevens dep. at 27-31 and Swamp dep. at 106, 190-92.) Again, while Defendants argue that those questions are not relevant, they have failed to convince me that the questions are outside the bounds of discovery under Rules 26 and 30.

With respect to questions relating to Defendants' search for documents, I find Plaintiff's characterization of those questions inaccurate. Of the two questions involved (Jung dep. at 29 and Stevens dep. at 18), neither objection improperly impeded discovery. In the Jung deposition, counsel for Defendants properly objected on the basis of attorney-client privilege, but permitted related questions outside that scope, and in the Stevens deposition, counsel for Defendants objected to a broad question, but permitted more narrowly tailored questions on the same subject. Accordingly, I do not find that counsel for Defendants acted improperly with respect to this topic.

In this case, the discovery deadline has already been extended three months. During the first thirty-days of the extension, the parties failed to take *a single deposition*, but instead spent

---

[3]Questions regarding the CASCADE source code [Docket No. 106, at 17] do not appear part of Plaintiff's motion to compel based on a direction not to answer.

4

the time bickering over the schedule and failing to return calls and e-mails, resulting in motions to compel the depositions. Due to this joint behavior, I was forced to "so order" a deposition schedule. Having completed depositions in accordance with the schedule, the parties then filed four discovery motions, and Plaintiff has indicated its intent to file a "comprehensive Motion to Compel with regard to Defendants' failure to provide discovery in response to Ideals written discovery requests." [Docket No. 113, at 1 n.1.] I have already ordered that one deposition be retaken in part. [Docket No. 114]

Under these circumstances, as I previously stated in my telephone conference with the parties on October 20, 2008, I am not inclined to order additional depositions. Counsel for the parties are both highly experienced, and there is no excuse for their inability to conduct discovery in a proper manner in accordance with the Rules of Civil Procedure. In lieu of permitting Plaintiff to retake those depositions where I have found that counsel for Defendants improperly directed the witnesses not to answer, Plaintiff may seek an adverse inference from the Court, on summary judgment and/or at trial, to the extent that it was unable as a result of improper instruction to obtain the evidence required to meet its burden.[4]

## II. Improper assertion of attorney-client privilege

Plaintiff cites to a number of instances where counsel for Defendants directed the witnesses not to answer a question on the grounds that the information sought was subject to the attorney-client privilege. Most of these questions, which were directed to multiple witnesses, inquired: the number of times the witness contacted Mr. Schermer's office between February

---

[4]I caution Plaintiff that any request for an adverse inference must be detailed and explicit, permitting the Court to understand where and how discovery was obstructed, and the express inference that should follow from such obstruction.

2005 and July 2005 regarding Acutronic USA's receipt of Ideal e-mail (Swamp dep. at 118-19; Jung dep. at 10, 65, 75; Stevens dep. at 55); whether Ideal e-mails were provided to Mr. Schermer's office (Swamp dep. at 120); and whether any e-mails sent to Mr. Schermer's office were done so individually at the time they were received by Acutronic, or collectively at a later date (Swamp dep. at 156). While the fact that a client communicates with its attorney is not privileged, counsel's questions, which address the content of the communication, exceed these bounds. See Constand v. Cosby, 232 F.R.D. 494, 500 (E.D. Pa. 2006) ("The client cannot be compelled to answer the question, 'What did you say or write to the attorney?'"). Accordingly I find that counsel for Defendants properly invoked the attorney-client privilege with respect to these questions. The privilege also applies to communications between corporate employees that relay legal advice (Hockenberry dep. at 36-37.) See Smithkline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 477 (E.D. Pa. 2005). However, the length of Mr. Stein's representation of Mr. Hockenberry (Hockenberry dep. at 9) is clearly not subject to the attorney-client privilege. See, e.g., In re G-I Holdings Inc., 218 F.R.D. 428, 431 (D.N.J. 2003). Mr. Hockenberry was improperly instructed not to answer that question.[5]

### III. Other Disruptive Behavior of Counsel

Plaintiff also argues that counsel for Defendants made innumerable objections suggesting answers to witnesses, or extensive objections disrupting the flow of the depositions. I follow the advice of my colleague in the Eastern District of Pennsylvania:

> Most noteworthy in these contentious depositions are two things: the attorneys' ill attitudes toward one another and their concomitant unwillingness to work together

---

[5] With respect to this question also, Plaintiff may seek an adverse inference, although the relevance of the question is not immediately obvious to me.

6

to advance discovery. . . .What the court has made plain for months is that it expects the parties, as required broadly by the rules of discovery, to work together to find the solid ground within the limits interposed. . . .Accordingly, the court will not rule question-by-question on these disputes. To do so might only encourage more inappropriate attorney behavior.

Hopkins v. Newday Fin., LLC, 2008 WL 4657822, at *3 (E.D. Pa. Oct. 17, 2008).

Nevertheless, I have reviewed each of the depositions at issue in detail. While I agree that on many occasions, counsel for Defendants could have limited their objections significantly, I do not believe that these objections unduly interfered with the discovery process. On many occasions, despite objections from counsel, the witness answered the questions or disregarded counsel's comments. Plaintiff bears the burden of demonstrating the need to retake the depositions of these witnesses, and upon my review of the motion and the deposition transcripts in full, I do not feel that it has met this burden. Indeed, apart from the explicit instructions not to answer discussed in Part I above, Plaintiff has not identified a single specific line of inquiry that was foreclosed as a result of Defendants' counsel's conduct. Under these circumstances, I deny Plaintiff's motion to compel and for sanctions relating to any improper objections.

* * *

Based on the foregoing, it is ORDERED that:

(1) Plaintiff's motion to compel discovery and for sanctions under Rule 37 [Docket No. 98] is GRANTED in part and DENIED in part as set forth herein; and

(2) Defendants' motion for a protective order is [Docket No. 104] is GRANTED in part and DENIED in part, as detailed above.

BY THE COURT:

/s/Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge